UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY ALLIED INDUSTRIAL, AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO and UNITED STEELWORKERS LOCAL 12003, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL GRID and BENEFITS COMMITTEE OF NATIONAL GRID USA SERVICE COMPANY, *as Plan Administrator for the Boston Gas Union Employees' Pension Plan*, <br><br> Defendants. | CIVIL ACTION <br> No. 20-11491-TSH |

## MEMORANDUM OF DECISION AND ORDER
September 28, 2021

**HILLMAN, D.J.**

### Background

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("United Steel"), and United Steelworkers Local 12003 ("Local 12003" and together with United Steel, "Union" or "Plaintiffs")[1] have filed a complaint against National Grid and Retirement Plan Committee of National Grid USA

---

[1] For ease of reference and because it makes no difference to the issues to be resolved in this case, the Court will at all times refer to the "Union" regardless of whether United Steel or Local 12003 was the actual party in interest.

Service Company[2] ("Benefits Committee" or "Plan Administrator" and together with National Gird, "Defendants") as plan administrator for the Boston Gas Union employees' Pension Plan (the "Pension Plan").

The Union and National Grid are parties to a collective bargaining agreement ("CBA"). The CBA contains a grievance procedure governing disputes arising thereunder which includes a binding arbitration process.  The Plaintiffs' claims arise out of Defendants refusal to arbitrate a dispute about monthly pension benefits brought by former employees, Harry Barnard ("Barnard") and Andrew Colleran ("Colleran"). By this action, the Union seeks to compel the Defendants to arbitrate the dispute. More specifically, the Plaintiffs have asserted: (1) a claim against National Grid for refusal to arbitrate grievances arising under the CBA in violation of Section 301 of the LMRA, 29 U.S.C. § 185(a)(the "LMRA"), and the Federal Arbitration Act 9 U.S.C. § 4 (the "FAA")(Count I); and a claim against Defendants for failure or refusal to arbitrate the dispute under and in accordance with the Pension Plan (Count II).

This Memorandum and Order addresses the following: Defendants' Motion to Dismiss (Docket No. 14). For the reasons set forth below, that motion is *granted*.

## Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's well plead facts as true, "drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1973 (2007); *see also Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)) (holding that the court must give the plaintiff "the benefit of all reasonable inferences therefrom"). To meet the plausibility

---

[2] According to Defendants, the proper name for this entity is the "Retirement Plans Committee of National Grid USA Service Company as Plan Administrator for the Boston Gas Union Employees' Pension Plan."

standard, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

Additionally, the plaintiff's complaint must contain factual allegations rather than labels and conclusions. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernàndez v. Fortuño-Burset,* 640 F.3d 1, 13 (1st Cir. 2011). When the plaintiff's well-pleaded facts do not assert "enough heft to show that plaintiff is entitled to relief", then dismissal is appropriate. *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 84 (1st Cir. 2008).

## Facts

### Relevant Provisions under the CBA and Pension Plan

Article XII of the CBA sets forth a procedure whereby a grievance *filed under the CBA* which is not resolved at more informal stages, shall be presented to a "Joint Committee" comprised of employees appointed by the Union (7 individuals) and by National Grid (6 individuals). If not resolved by the Joint Committee, the grievance can then be referred to arbitration upon written request of either party. The arbitration shall be conducted in accordance with procedures set forth in the CBA. Article XII of the CBA specifies matters to be addressed by the Joint Committee—there is no mention of disputes arising under the Pension Plan. Moreover, Article X of the CBA includes the following provision: "Nothing herein will be construed to alter, amend or in any way change the provisions of the Boston Gas Company Union Employees' Pension Plan. Complete benefit details are contained in the Plan Document."

As to grievances arising under the Pension Plan, Article 12 of the Pension Plan provides for the creation of a Joint Pension Committee with three members appointed by the Union and three members appointed by the Plan Administrator. The Joint Pension Committee is empowered "[t]o make determinations as to the rights of any Employees applying for or receiving Retirement Allowances…" and is "formed to determine questions of eligibility under the Plan." The Pension Plan includes the following pertinent provisions:

> 12.01. <u>Administration of Plan</u>. Except as otherwise stated in this Article 12, the administration rules of the Component Plan are set forth in the Master Pan.
>
> 12.025. <u>Arbitration</u>. In the event that the members of a Joint Pension Committee cannot settle any dispute, with the exception of determining whether an Employee is disabled, the whole matter will be referred to arbitration. The fees for such arbitration will be paid jointly by the parties involved. No matter regarding the Plan or any difference arising thereunder shall be subject to the grievance procedure of a Collective Bargaining Agreement.
>
> 12.026. <u>No Power to Modify</u>. The Joint Pension Committees shall have no power to add to or subtract from or modify any of the terms of the Plan nor to change or add to any benefit provided by the Plan, nor to waive or fail to apply any provisions of the Plan.
>
> 12.027. <u>Referral Back to Parties</u>. Any case referred to a Joint Pension Committee on which it has no power to rule shall be referred back to the parties without ruling.
>
> 12.029. <u>No Appeal After Review of Claim</u>. Subject to the provisions of Section 503 of ERISA and to the "Rules and Regulations for Administration and Enforcement" issued by the Department of Labor under Title 29, Part 2560 of the United States Code, which requires that every pension plan shall provide both a procedure for presenting claims and a procedure for a fair review of claims which shall comply with the regulations of the Department of Labor, there shall be no appeal from any ruling by a Joint Pension Committee which is within its authority; and each such ruling shall be final and binding on the Union and its members, the Employee or Employees involved, and on the Plan Administrator.

<u>The Union Pursues Grievances on behalf of Barnard and Colleran</u>

On January 20, 2019, the Union and National Grid entered into the CBA effective through June 16, 2024. The CBA governs the terms and conditions of employment for the

4

bargaining unit employees. The Union operates as the exclusive bargaining agent for a Local 12003 employees including Barnard and Colleran.  The CBA contains a provision concerning retirement benefits for employees of National Grid who are eligible to receive pension benefits under the Pension Plan, which is a component of the Keyspan Retirement Plan (the "Master Plan").

The purpose of the Pension Plan is to provide benefits and, upon retirement, lifetime pensions to eligible employees who are Union members.  The Pension Plan defines who is an eligible employee and sets forth the monthly benefit available to such employees based on their retirement date and years of service. Article VIII, Section 5 of the CBA includes the following provision which modifies the monthly benefit available under the Pension Plan:

> Keyspan Retirement Plan, Addend M. Boston Gas Company Union Employees Pension Plan will provide a monthly benefit to eligible employees who retire on or after February 1, 2019 $81.00 per month per year of services … .

Barnard and Colleran, who are both eligible to receive benefits under the Pension Plan, assert that they have not received all the benefits to which they are entitled thereunder. On January 3, 2020, the Union filed separate grievances on behalf of Barnard and Colleran alleging that they were not properly paid their full pensions in violation of Article VIII, Section 5 of the CBA.

On February 4, 2020, after failing to resolve the aforementioned grievances, United Steel Sub-District Director Stephen Finnigan notified National Grid in writing that pursuant to Article IX of the CBA, Barnard's and Colleran's grievances should be referred to arbitration for final resolution.  On February 10, 2020, National Grid rejected the Union's arbitration demands on the grounds that "Pursuant to the terms of the parties' collective bargaining agreement, the grievance is not arbitrable." National Grid pointed out that:

5

> [t]he Master Plan states at Article VII that the Benefits Committee appointed by the Board of Directors of the Company shall be the named fiduciary with respect to the control and management of the operation and administration of the Plan and shall be Plan Administrator, having "full power and complete discretion":
>
> …
>
> (ii) To construe all terms, provisions conditions and limitations of the Plan;
>
> (iii) To determine all questions arising out of or in connection with the provisions of the Plan or its administration in any and all cases in which the Benefits Committee deems such a determination advisable; [and]
>
> ….
>
> (v) To establish a claims procedure in accordance with applicable law, which shall afford a reasonable opportunity to any Participant whose claim for benefits has been denied for a full and fair review of the decision, denying the claim … .

National Grid also noted that the CBA, by its terms, is not intended to alter or amend the terms of the Pension Plan which contains the complete benefit details. National Grid advised Barnard and Colleran to pursue their grievances in accordance with the procedures set forth in the Pension Plan.

The Union then submitted Barnard's and Colleran's grievances to the Joint Pension Committee for a determination of their rights under the Pension Plan. As to both disputes, the Joint Pension Committee's vote was a tie, that is, the Joint Pension Committee was unable to resolve the matters.[3] On June 15, 2020, the Union invoked the arbitration procedure set forth in Article 12.025. Defendants refused to engage in arbitration after taking the position the

---

[3] As noted above, Article 12.027 of the Plan provides that if the Joint Pension Committee has no power to rule on a matter referred to it, such matter shall be referred back to the parties without ruling. Based on the parties' submissions, it appears that the Joint Pension Committee did not refer the matter back to the parties because it determined it did not have authority to rule on the grievance, rather the matter was referred back because resolution of the grievance ended in a 3-3 tie. At the same time, there is nothing in the record which makes clear the basis for the Joint Pension Committee's ruling. For example, it is not clear that three members of the Joint Pension Committee voted in favor of granting the grievance and three against, as opposed to three members voting they had no jurisdiction over the grievance and three members voting some other way.

arbitration provision set forth in Article 12 is inapplicable because Barnard's and Colleran's grievances do not concern their eligibility to receive benefits under the Pension Plan and therefore, are not within authority of the Joint Pension Committee. More specifically, Defendants asserted that it is undisputed that Barnard and Colleran are eligible to receive and have continuously been paid benefits under the Plan– their grievances concern the amount of the benefits to which they are entitled as a result of a rule established by the Plan Administrator that members must give at least forty-five days prior notice of their retirement date with which they failed to comply (resulting in their monthly benefit being slightly lower than they expected). Defendants further asserted that Barnard and Colleran must seek review of their grievances in accordance with the "Claim Review Procedure" set forth in the summary plan description.

## Discussion

In Count I, the Plaintiffs have asserted that National Grid's refusal to arbitrate Barnard's and Colleran's grievances violates national labor policy as set forth in the LMRA, and the FAA. They seek to compel arbitration of those grievances in accordance with the CBA.  In Count II, Plaintiffs assert that all Defendants have violated the FAA by refusing to arbitrate said grievances as required by the Pension Plan provisions. They seek to compel arbitration pursuant to the Pension Plan.  The Defendants seek to dismiss the Complaint on the grounds that the underlying grievances, which concern two retired employees' pension benefits, are not arbitrable under the terms of either the CBA or the Pension Plan. The Defendants further assert that Count II of the Complaint must be dismissed because Plaintiffs lack standing to seek to compel arbitration under the Pension Plan.

<u>Whether Barnard's and Colleran's Grievances are Arbitrable under the Terms of the CBA</u>

Plaintiffs' claim that National Grid violated the LMRA and FAA by failing to arbitrate Barnard's and Colleran's grievances in accordance with the procedures set forth in Article XII of the CBA requires little discussion.  It is clear under the terms of both the CBA and the Pension Plan that pension disputes such as those at issue in this case are not subject to the arbitration provisions of the CBA.  Put another way, Plaintiffs' claims are not arbitrable under the CBA because pension benefits are controlled by the terms of the separate Pension Plan and, therefore, are subject exclusively to the claims procedures established in the Pension Plan. Plaintiffs' argument to the contrary is specious and undeveloped.  Accordingly, National Grid's motion to dismiss Count I is *granted*.

<u>Whether Barnard;s and Colleran's Grievances are Arbitrable Under the Plan</u>
<u>Whether the Union has Standing to Assert the Alleged Claims</u>

The Defendants assert that the Union does not have standing to bring the claims asserted against them in Count II because it is not a member of the Joint Pension Committee. Defendants further argue that the Union does not allege that it is otherwise empowered to invoke the arbitration provisions of Article 12 of the Pension Plan and therefore, has not properly alleged that it has suffered some actual or threatened injury sufficient for it to invoke standing in regard to such claims.  Moreover, the Defendants argue that because Barnard and Colleran are asserting claims regarding the amount of their pension benefits, as opposed to their eligibility to receive pensions benefits under the Pension Plan, their grievances do not come within the "purview" of the Joint Pension Committee.

The Union, on  the other hand, argues that Article 12 of the Plan cannot possibly be read to provide that the Joint Pension Committee members are "parties" to the dispute for purposes of arbitration provision. The Union also argues that under *Lujan v. Defenders of Wildlife*, 504 U.S. ,

8

555, 560 & n.1, 112 S.Ct. 2130 (1992) it has standing because: (1) it suffered injury from the inability to arbitrate the dispute on behalf of its members and other potentially affected members who are being subjected to "extra-contractual time requirements for applications for benefits;"[4] (2) the interest the suit seeks to protect are pertinent to the objectives for which the organization was formed; and (3) neither the claim nor relief requested requires the Union members to participate in the suit. In other words, the Union asserts it satisfies the prerequisites of "associational standing" identified by the Supreme Court in *United Food & Commercial Workers, Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553, 116 S.Ct. 1529 (1996).

The provision in question, Article 12.025, states that "[i]n the event that the members of a Joint Pension Committee cannot settle any dispute, the whole matter will be referred to arbitration. T]he fees for such arbitration will be paid jointly by the parties involved." As noted above, the Defendants assert that giving this language its plain meaning, only Joint Pension Committee members have the authority to invoke arbitration pursuant thereto. The Union argues that such interpretation would be "non-sensical" because if the Joint Pension Committee members were considered actual "parties" to the dispute at arbitration, they each individually would be responsible for paying out of their own pockets to arbitrate disputes relating to the rights of Pension Plan members. On the one hand, I agree with the Plaintiffs that the argument as presented by the Defendants, which as I read it is that only members of the Joint Pension Committee have standing to invoke the arbitration provisions of Article 12.025 if a dispute with a Pension Plan member remains unresolved, makes little sense both from a legal perspective interpreting the plain meaning of the provision or in application. First, Defendants' interpretation

---

[4] The dispute about the amount of benefits to which Barnard and Colleran are entitled arises out of the Plan Administrator's requirement, contained in the Pension Plan's summary document, that retirees provide the Plan Administrator with 45 days prior notice of their retirement date.

would make sense only if Article 12.025 is meant to deal only with disputes *among the Joint Pension Committee members* and not disputes between the Joint Pension Committee and a party claiming entitlement to benefits. Second, given that the language of Article 12 is ambiguous as to who has the power to compel arbitration should the Joint Pension Committee be unable to resolve a dispute, the policy favoring arbitration suggests that a broad interpretation is appropriate. One would, for instance, presume that the members themselves (Barnard and Colleran) would have standing to invoke the arbitration clause if their dispute remains unresolved.

On whole, the most reasonable, commonsense interpretation if Article 12.025 is that if the Joint Pension Committee cannot resolve the issue *any* party to the dispute can invoke arbitration, not just a member of the Joint Pension Committee. Thus, Barnard and Colleran are authorized to invoke the arbitration provision. The question then becomes whether the Union has standing to act in their stead. The Union has indicated that should the Court determine that it does not have standing to assert the instant claims on behalf of Barnard and Colleran, then the Complaint will be amended to include Colleran and Barnard as parties. While issues of standing are paramount and generally must be decided prior to addressing the merits of the asserted claims, under the circumstances, the Court finds it more expedient to assume that the Union has standing and address the question of whether it was within the authority of the Joint Pension Committee to decide the underlying grievances.

<u>Whether Deciding the Underlying Grievances is within the Authority of the Joint Pension Committee</u>

The substance of the grievances which the Union is pursuing on behalf of Barnard and Colleran, as alleged in the Complaint, is that National Grid failed to pay Barnard and Colleran the full amount of monthly retirement benefits to which they are entitled. However, in their

opposition and at the motion hearing, Plaintiffs instead argue that the underlying grievances do not relate to the amount of benefits to which Barnard and Colleran are entitled but rather the issue is whether there was an error made in determining *when* they were eligible to receive benefits— a determination which they argue is within the authority of the Joint Pension Committee.

Pursuant to the terms of the Pension Plan, rulings made by the Joint Pension Committee are not appealable so long as the decision made by it are within its authority. Understandably, the Joint Pension Committee is, therefore, a body with limited jurisdiction to decide disputes related to pension benefits. I find that the under the plain language of the Pension Plan, as informed by the Master Plan: (1) the Joint Pension Committee has only the authority to determine pensioners' eligibility to receive benefits under the Pension Plan and not to modify the amount of benefits received, *see* Pension Plan, at Articles 12.02, 12.026, and (2) Barnard and Colleran are both eligible to receive benefits under the Pension Plan, that is their disputes relate to the amount of benefits they are receiving, *see* Pension Plan, at Articles 2.05 ("Eligible Employee" means any employee who is included in a unit of employees subject to a Collective Bargaining Agreement which provides for this Pension Plan). The Plan Administrator's determination to this effect was not arbitrary and capricious. *See O'Shea through O'Shea v. UPS Ret. Plan*, 837 F.3d 67, 73 (1st Cir. 2016)(where, as here, ERISA plan provides the plan administrator with the authority and discretion to interpret the plan and to determine eligibility for benefits, administrator's decision is upheld unless it was arbitrary, capricious, or an abuse of discretion). Thus, Defendants' motion to dismiss Plaintiffs' claim to compel arbitration under the Pension Plan (Count II), is *granted*.

In this case, Plaintiffs seek to compel arbitration of the underlying grievances pursuant to the terms of the CBA and/or the Pension Plan. I find that the arbitration provision contained in Article XII the CBA does not apply to grievances concerning a retiree's pension benefits under the Pension Plan. Additionally, the Joint Pensions Committee did not have the authority to rule on the grievances submitted by the Union on behalf of Barnard and Colleran, and therefore, the arbitration provision set forth in Article 12 of the Pension Plan is also inapplicable. Instead, Barnard's and Colleran's remedy is to pursue the claims in accordance with the review procedure set forth in the Pension Plan. Accordingly, Defendants' motion to dismiss is *granted*.

## Conclusion

Defendants' Motion to Dismiss (Docket No. 14) is **granted**.

**SO ORDERED.**

/s/ ***Timothy S. Hillman***
TIMOTHY S. HILLMAN
DISTRICT JUDGE